UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP ANDREW LUCAS, | ) | Case No.  1:11CV2497 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD NUGENT |
| | ) | Magistrate George J. Limbert |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | REPORT & RECOMMENDATION OF |
| COMMISSIONER OF | ) | MAGISTRATE JUDGE |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  ECF Dkt. #1.  Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in her decision by: (1)  failing to order physical and psychological consultative examinations; (2) finding that Plaintiff could perform limited light work; (3) failing to consider the side effects of his medication; (4) citing Plaintiff's appearance and demeanor as justification for her adverse credibility determination; and (5) failing to properly analyze his obesity.  ECF Dkt. #15.  For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's complaint in its entirety with prejudice.

I.      **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on September 9, 2008, alleging disability beginning March 1, 2008 due to mental illness, depression, and high blood pressure.  ECF Dkt. #11

1

at 172-182[1].  The Social Security Administration ("SSA") denied Plaintiff's applications initially and upon reconsideration.  *Id*. at 123-139.  Plaintiff requested a hearing before an ALJ which was held on November 10, 2010.  *Id*. at 85, 140.

On February 10, 2011, the ALJ issued a decision finding that Plaintiff had the severe impairments of:  bilateral sensorineural hearing loss; chronic non-suppurtative otitis media; degenerative disc disease at the T12-L1 joint, with annular bulge and mild degenerative disc disease at the L5/S1 joint with bilateral foraminal stenosis; obesity; diabetes mellitus type II; hypertension; major depressive disorder with psychotic features; paranoid schizophrenia; and schizo-affective disorder.  ECF Dkt. #11 at 72.  The ALJ further found that none of Plaintiff's severe impairments, either individually or in combination, met or equaled a listed impairment in 20 C.F.R. Part 4, Subpart P, Appendix 1.  *Id.* at 73-74.  She found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the limitations of:  no exposure to loud background noise; simple and routine tasks that can be learned in thirty days or less; low stress tasks which are defined as those with no high production quotas, such as piece work or assembly line work, with no strict time requirements; no arbitration, negotiation or confrontation; and jobs which do not involve directing the work or being responsible for the safety of others.  *Id*. at 74.  Based upon this RFC, the ALJ  found that Plaintiff could not return to his past relevant work, but, relying upon the testimony of the vocational expert ("VE"), he could perform other jobs existing in significant numbers in the national economy, such as the representative occupations such as an assembler, cleaner/housekeeper, or a cashier.  *Id*. at 79.

Plaintiff appealed the ALJ's February 10, 2011 decision to the Appeals Council, but the Appeals Council denied his request for review.  ECF Dkt. #11 at 62-65.  The ALJ's decision therefore

---

[1]  Page references are to Page ID Numbers in the transcript of proceedings.

became the final decision of the Commissioner and Plaintiff appealed that decision to this Court on

November 17, 2011.  ECF Dkt. #1.  Judge Nugent referred the instant case to the undersigned on the

same date.

Plaintiff filed his brief on the merits on June 29, 2012 and Defendant filed his brief on the

merits on August 13, 2012.  ECF Dkt. #s 15, 16.

## II.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB

and SSI.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R.  404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R.  404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R.  404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward

with the evidence at the first four steps and the Commissioner has the burden at Step Five to show

that alternate jobs in the economy are available to the claimant, considering his age, education, past

work experience and RFC.  *See Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**III.     STANDARD OF REVIEW**

This Court's review of the ALJ's decision is limited in scope by § 205 of the Social Security Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla of evidence, but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532.  Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**IV.     ANALYSIS**

**A.     CONSULTATIVE EXAMINATIONS**

Plaintiff first asserts that the ALJ failed to fully and fairly develop the record by failing to order psychological and medical consultative examinations.  ECF Dkt. #15 at 9-11.  It is well-settled that an ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing because social security proceedings are non-adversarial in nature.  *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 189 (6th Cir. 2009), citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)(citing *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  However, it is only when a claimant is not represented by counsel when an ALJ has a special,

-4-

more  heightened duty to develop the record. *Lashley*, 708 F.2d at 1051 (citations omitted).

Further, the social security regulations do not require an ALJ to refer a claimant to a consultative specialist. *See Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 214 (6th Cir. 1986).  Rather, the ALJ is granted the authority to order such consultations "[i]f the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source," 20 C.F.R. §§ 404.1512(f), 416.912(f), or "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).  The regulations set forth examples of when a consultative examination may be necessary:

> (1)  The additional evidence needed is not contained in the records of your medical sources;
>
> (2)  The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3)  Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
>
> (4)  There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

*Id.*  The Sixth Circuit adopted the following statement by the Fifth Circuit Court of Appeals in determining whether a consultative examination was necessary:

> "[F]ull inquiry" does not require a consultative examination
> at government expense unless the record establishes that such
> an examination is necessary to enable the
> administrative law judge to make the disability decision.

*Landsaw*, 803 F.2d at 214, quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977).

Accordingly, the ALJ has the discretion to order a consultative examination. *Foster v. Halter*, 279

F.3d 348, 355 (6th Cir. 2001).  Moreover, the burden of providing a complete record, that is, complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant and the claimant is responsible for furnishing evidence to show that he is disabled.  *Landsaw*, 803 F.3d at 214; *Rise v. Apfel*, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. Oct. 13, 2000), unpublished.

The undersigned recommends that the Court find that the ALJ was not required to order physical or additional psychological consultative examinations in this case  because the evidence as a whole was sufficient for her to make a disability determination.  Plaintiff admits in his brief on the merits that "there is a substantial amount of medical evidence in the record" of his case.  ECF Dkt. #15 at 11.  However, he asserts that "that evidence consists largely of treatment notes from various practitioners in the Public Hospital where the claimant was being treated, under the County Hospital's 100% discount program."  *Id*.  He therefore reasons that little physical or psychological evidence exists regarding him or his medical records.  *Id.*

While there are no treating physician or treating psychiatrist reports in the record, there are many treatment notes from Plaintiff's medical sources, as well as diagnostic test results, and two agency reviewing psychologist assessments regarding Plaintiff's conditions and abilities.   In determining Plaintiff's RFC and the conclusion that he is not disabled for social security purposes, the ALJ reviewed each of Plaintiff's impairments and cited to the record evidence supporting her determination as to each, evidence which constitutes substantial evidence to support her determination.

The ALJ discussed Plaintiff's ear impairments, indicating that the impairments and hearing loss were confirmed by diagnostic testing, and noted that Plaintiff underwent surgery and both he and his doctor indicated that Plaintiff experienced improvement with surgery and a hearing aid.  ECF Dkt. #11 at 75, citing ECF Dkt. #11 at 440-441, 597, 612, 615, 621.  She also cited to Plaintiff's testimony

that the tubes in his ears helped him hear.  *Id.* at 99-100.

The ALJ also reviewed the evidence as to Plaintiff's degenerative disc disease, noting that 2006 imaging results showed the disease at the T12-L1 joint, with annular bulge and mild degenerative disc disease with bilateral foraminal stenosis with moderate annular bulge at the L5-S1 joint.  ECF Dkt. #11 at 75, citing ECF Dkt. #11 at 589.  However, the ALJ cited additional records and noted that the physical examinations in the record either did not address the impairment at all or reported essentially normal findings, with only mild degenerative changes.  ECF Dkt. #11 at 75-76, citing ECF Dkt. #11 at 462, 632.  The ALJ also noted that Plaintiff does not treat for this impairment, did not more than occasionally complain of the impairment, and only recently began taking ibuprofen for this impairment.  ECF Dkt. #11 at 76, citing ECF Dkt. #11 at 94-95.

As to his hypertension and diabetes mellitus II impairments, the ALJ discussed the diagnoses and records relating thereto and indicated that Plaintiff was compliant with medications to control these conditions and the conditions were controlled.  ECF Dkt. #11 at 76, citing ECF Dkt. #11 at 483, 487-488, 592, 603, 624.

The ALJ also addressed Plaintiff's obesity, noting that he was diagnosed with obesity and registered a body mass index over thirty across the time period of his social security claim.  ECF Dkt. #11 at 76.  The ALJ found that no physical examination or other evidence indicated that Plaintiff's obesity caused excess fatigue or prevented him from performing routine physical movements in a workplace setting.  *Id.*  The ALJ also noted Plaintiff's testimony at the hearing that his weight did not cause him any problems.  *Id.*, citing ECF Dkt. #11 at 101.

The ALJ also discussed Plaintiff's mental impairments, noting his diagnoses of paranoid schizhrenia, schizo-affective disorder, and major depressive disorder with psychotic features.  ECF

Dkt. #11 at 76, citing ECF Dkt. #11 at 408-409, 592, 607.  The ALJ cited treatment notes showing that Plaintiff had regularly sought treatment for these impairments, complied with a medication regimen which was largely successful in controlling his conditions, and was assessed as stable on many occasions by his treating psychiatrist.  ECF Dkt. #11 at 76, citing ECF Dkt. #11 at 559, 606-607.  The ALJ also cited Plaintiff's testimony at the hearing that his medications were "very helpful" and cited to the treating psychiatrist's treatment notes showing routinely normal mental status examinations, with logical and organized thought processes, calm affect, no abnormal thought processes or disorganized thoughts of a psychotic nature, no suicidal or homicidal ideations, no auditory or visual hallucinations, good judgment and insight, good recall, and sustained attention span and concentration.  *Id.*  The ALJ also cited to the findings of the agency reviewing psychologists, who found that Plaintiff could perform simple, routine tasks, follow simple instructions, adjust to change if given a bit of time, and interact with others on a superficial basis for brief interchanges.  ECF DKt. #11 at 78, citing ECF Dkt. #11 at 95-98, 361-378, 548.  Plaintiff does not point to additional evidence that the agency reviewing psychologists failed to take into account or that the ALJ failed to address.

As to all of the impairments, the ALJ cited to Plaintiff's testimony and his statements in social security forms and to treatment providers about his daily living activities and his work activity after his alleged onset date.  ECF Dkt. #11 at 77.  She noted that Plaintiff reported that he lived independently in a home with family members, he could drive a car, could do yard work, and could leave his home unaccompanied.  *Id.*  The ALJ also noted that Plaintiff continued to seek work after his alleged onset date and he had indicated that he did odd jobs in his neighborhood such as lawn care, snow removal and painting.  *Id.* at 72.

-8-

Based upon her thorough review of the record evidence, both medical and non-medical, the undersigned recommends that the Court find that the ALJ had sufficient evidence in the record in order to make a disability determination and did not err by failing to order a consultative physical or psychological examination.

**B**.    **OBESITY**

Plaintiff also contends that the ALJ committed reversible error when she failed to properly analyze his obesity in accordance with Social Security Ruling ("SSR") 02-1p.  ECF Dkt. #15 at 668-669.  For the following reasons, the undersigned recommends that the Court find no merit to this assertion.

The social security regulations require ALJs to consider the effects of obesity as part of their adjudication of a claim for benefits at Steps Two through Five of the sequential evaluation process. *See* SSR 02-1p; *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.2011).  SSR 02–lp recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform postural functions such as climbing, balancing, stooping, and crouching.  SSR 02–1p, 2000 WL 628049, at *6.  However, SSR 02–lp does not mandate a particular mode of analysis for an obese disability claimant and does not establish whether obesity is a severe impairment or whether it correlates with any degree of functional loss.  *Id.; Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir.2006).  Rather, the Ruling simply recognizes that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *Id.* at 418 (quoting SSR 02-1p).

In the instant case, the ALJ found that Plaintiff's obesity was a severe impairment at Step Two of the sequential evaluation process. ECF Dkt. #11 at 72. She thereafter cited to SSR 02-1p at Step Three of the process, noted Plaintiff's obesity diagnosis and evaluated Plaintiff's obesity, reviewing the treatment notes from the Weight Management Clinic and Plaintiff's testimony. *Id.*, citing ECF Dkt. #11 at 597, 626. The ALJ then considered the affect that Plaintiff's obesity had on his ability to perform routine movements and other physical activities of a workplace setting, finding that the medical evidence regarding Plaintiff's obesity and its impact on his abilities was mostly unremarkable. *Id.* The ALJ also cited to Plaintiff's testimony at the hearing that his weight did not cause him any problems. *Id.* at 76, citing ECF Dkt. #11 at 101. The ALJ therefore found that the obesity, either individually or in combination with Plaintiff's other impairments, did not result in limitations greater than those that she assessed. *Id.* She also noted that no evidence in the record directly indicated that Plaintiff's obesity caused him excess fatigue. ECF Dkt. #11 at 76. The ALJ also indicated that she considered the combined effects of Plaintiff's obesity with his other impairments to determine if they were greater than might be expected without obesity. *Id.* She determined that she adequately accommodated the impairments with her RFC which required Plaintiff to lift no more than twenty pounds occasionally and to sit, stand/walk no more than six hours of an eight-hour workday. *Id.*

Plaintiff contends that the Weight Management Clinic records, particularly the October 9, 2008 treatment note, indicated "that there was a concern that the Claimant's severe obesity worsens[sic] has documented hypertension, diabetes and sleep apnea (TR 472). ECF Dkt. #15 at 669. However, the ALJ addressed the impairments of hypertension and diabetes both separately and with the combined impact of Plaintiff's obesity and she determined that the medical records did not result in limitations or severity greater than those that she set forth in her decision. ECF Dkt. #15 at 669; ECF Dkt. #11

-10-

at 76.  Substantial evidence supports the ALJ's determination as the Weight Management Clinic records do not discuss the severity or any limiting restrictions from Plaintiff's obesity, but rather state that "Plaintiff is an obese patient with the co-morbid conditions hypertension, sx suggestive of obstructive sleep apnea and FH of Diabetes Mellitus Type II with mild elevation of random glucose which can be improved with weight loss."  ECF Dkt. #11 at 536.  This Weight Management Clinic record cited by Plaintiff from October 9, 2008 also indicates that the doctor wished to refer Plaintiff for a sleep study but he declined the referral.  *Id*. at 536.  Thus, insofar as the ALJ did not consider sleep apnea in her decision, no formal diagnosis was made of sleep apnea and Plaintiff presents no medical evidence that he definitively had sleep apnea or suffered from fatigue due to sleep apnea.

Based upon a review of the ALJ's decision, the undersigned recommends that the Court find that the ALJ conducted a proper obesity analysis pursuant to SSR 02-1p.

**C**.        **CREDIBILITY**

Plaintiff also contends that the ALJ committed reversible error when she cited to his appearance and demeanor at the hearing in order to justify her adverse credibility finding.  ECF Dkt. #15 at 665-666.  The undersigned recommends that the Court find no merit to this assertion.

At the beginning of the hearing, it appears that the ALJ grew increasingly frustrated with Plaintiff's inability to hear her questions but had the complete ability to hear those of his counsel.  ECF Dkt. #11 at 91.  The following exchange was had on the record at the very beginning of the hearing between Plaintiff, the ALJ and Plaintiff's counsel:

Q:        Now, sir, would you please tell me your address?

A:        What's that?

Q:        Would you tell me your address?

-11-

A: I don't understand.

ALJ: Let me see - - in the record, it says that - - I thought I understood that the claimant had a hearing aid and was doing pretty well.  I don't' see him - - is he wearing one today?

ATTY:It was a – do you have a hearing aid on now?

CLMT: I have hearing aids, but they don't work.

ATTY: It's what he's told me in the past.

ALJ: The one thing the record says - - the hearing aid worked well.  I will speak loudly, but his not answering my questions and saying that he doesn't hear is not going to cut it, counsel.  We'll do the best we can.

ATTY: Right.  That's all we can do.

ALJ: No - - I know you can, but you need to know - -

ATTY: Sure.

ALJ: - - I did read the record, and I do read what - -

ATTY:Right, I know you do. [chuckles]

ALJ: Okay.  Do you think this will work better if you ask him questions?  I mean, you're talking softer; he's hearing you and he's not hearing me.

ATTY:I could try.  Maybe we should try.

ALJ: We'll do the - -

ATTY:With your permission to - -

ALJ: Absolutely.  I want the best hearing, but perhaps he doesn't understand where his best interests lay.

ECF Dkt. #11 at 91-92.  Plaintiff's counsel thereafter asked him questions and the ALJ thereafter

reexamined Plaintiff, again with Plaintiff finding it difficult to hear her questions but again able to hear

those of his counsel.  The ALJ stated:

-12-

ALJ: He was - - you're talking in a normal voice, I'm talking quite loud. I'm having difficulty believing that he can understand everything you say but I can shout and he's not hearing me. I'm going to continue, but I will tell you [INAUDIBLE] make my assessment of credibility.

*Id*. at 105-106. More testimony was taken from Plaintiff and the VE. Plaintiff's counsel and the ALJ ended the hearing with the following exchange, after Plaintiff's counsel indicated that Plaintiff was scheduled for another tube implantation hearing in the upcoming week:

ALJ: Okay. And I do want the record to reflect - -

ATTY: Okay.

ALJ: - - once again that when you speak to him and it's a normal voice, he's hearing everything you're saying, and he is responding, whereas he, at a few feet further, isn't hearing me. So find that he can't hear coworkers - - I'm just not going to - -

ATTY: Well - -

ALJ: - - I'm letting you know ahead of time. So he can do this. And if you want to get a statement from a doctor - -

ATTY: Well.

ALJ: - - I will leave the record open for - - it's next week - - three weeks. Will that be enough for you to get information [INAUDIBLE]?

ATTY: We'll probably need four, knowing what Metro's time frame is for getting records to me. I'll send out the request this week, even before his procedure. They take six days from the time they get it before it gets to somebody to work.

ALJ: No problem but - -

ATTY: I will do that.

ALJ: - - I like to be straight, up-front with what I'm saying. And I think this has been kind of dramatic.

ATTY: Well, if you want to put me under oath, your honor, I can tell you that I have trouble with him too.

ALJ: Well, you know - - and counsel, you aren't here to be a witness, but - -

ATTY: Right, I understand that.

-13-

>ALJ:  - - and I'm just watching the desperate difference between when you talk and I talk.   And like I said, I'm right up-front with you about this.  Anything further?

>ATTY:Nothing further.

*Id*. at 115-117.

In her decision, the ALJ commented on Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing."  ECF Dkt. #11 at 78..  She found the following:

>Although the claimant was apparently able to hear and respond appropriately to each question posed, in a normal tone of voice, by his representative, the claimant continuously claimed to be unable to hear questions posed, in a raised voice just short of a shout, by the undersigned.

*Id*.  Plaintiff contends that the ALJ did not conduct a proper credibility analysis and erred in using Plaintiff's inability to hear her during the hearing in her adverse credibility determination.  ECF Dkt. #15 at 665-668.  Plaintiff explains in his merits brief that he could hear his counsel's questions at the hearing and not those of the ALJ because his counsel was seated closer to his left ear, the ear from which he could hear, and the ALJ was closer to Plaintiff's right ear, from which he could not.  Notably, neither Plaintiff nor his counsel mentioned this at the hearing or determined that it would be beneficial to have Plaintiff move his seat at the hearing.  In fact, when the ALJ expressed her concern about Plaintiff's inability to hear her questions and told Plaintiff's counsel that this "was not going to cut it" and "[w]e'll do the best we can," Plaintiff's counsel merely responded, "Right.  That's all we can do."  ECF Dkt. #11 at 91.  At the end of the hearing when the ALJ again expressed concern regarding Plaintiff's inability to hear her questions, Plaintiff's counsel merely offered "Well, if you want to put me under oath, your honor, I can tell you that I have trouble with him too."  *Id.*  at 116.

Nevertheless, an ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence.  *Walter,* 127 F.3d at 531.  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the

witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.2001), quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972).  However, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence.  *Rogers,* 486 F.3d at 249.

The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 416.929.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.* 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type,

dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993).  Nevertheless, an ALJ's assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters*, 127 F.3d at 531.

The ALJ did not commit error in commenting on Plaintiff's "unpersuasive appearance" and his inability to hear her questions during the hearing while he had the ability to completely hear the questions asked by his counsel.  While an ALJ cannot rely solely upon her observations at the hearing in determining a claimant's credibility, *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983), she "may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990); *see also Lucido v. Comm'r of Soc. Sec.*, No. 03-2501, 109 Fed. App'x 715, 716-717, 2004 WL 1770580 (6th Cir. Aug. 5, 2004), unpublished.  It is appropriate for an ALJ to consider a claimant's demeanor at the hearing and an ALJ should not ignore her own observations of a claimant's demeanor and actions. *Harris v. Heckler*, 756 F.2d 431, 439 (6th Cir. 1985).  "Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor 'is invaluable, and should not be discarded lightly.'" *Id.,* quoting *Kirk v. Sec'y*, 667 F.2d 524, 538 (6th Cir. 1981), quoting *Beavers v. Sec'y of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).  Thus, the ALJ's comment in her decision about Plaintiff's appearance and demeanor at the hearing was not erroneous.

Moreover, even if the ALJ was wrong in her finding on this issue and Plaintiff could not hear the ALJ because of where he was seated in relation to the ALJ, the ALJ clearly stated in her decision

that her observation was not the only factor that she considered in her credibility determination.  ECF Dkt. #11 at 78.  She stated:  "[i]t is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity." *Id.*  Thus, even if Plaintiff could hear his counsel's questions and not those of the ALJ because his counsel was seated closer to his left ear, the ear from which he could hear, and the ALJ was closer to Plaintiff's right ear, this was only one factor that the ALJ considered in making her credibility determination.

The ALJ's decision also shows that she considered the other factors in SSR 96-7p in assessing Plaintiff's credibility.  She recited the proper regulations and SSR 96-7p in her decision, indicating that she had considered the relevant factors in determining Plaintiff's credibility  ECF Dkt. #11 at 74-75. She thereafter considered each of Plaintiff's impairments, the medical evidence relating thereto, Plaintiff's testimony at the hearing, and the statements that he made in other social security reports and medical provider reports.  *Id.* at 75-78.

The ALJ reviewed Plaintiff's daily living activities, both as reported to her at the hearing and as he reported to his medical providers and in social security forms.  ECF Dkt. #11 at 75.  Plaintiff asserts in his merits brief that he had trouble with some activities of daily living, and on some days did nothing at all, although he did testify that he lived independently in a home with family members, assisted in housekeeping chores, performed yard work, took care of pets, drove a car, watched television, and left his home unaccompanied to go to doctor's appointments and the grocery store. ECF Dkt. #11 at 77.  Plaintiff also cites to reports in the record where he indicated that he could not use a checkbook, he had trouble following spoken instructions, he could not finish things that he started, and he had been fired from his last three jobs.  ECF Dkt. #15 at 668.  However, the ALJ noted that Plaintiff was discharged from his last job because he failed to call off of work.  ECF Dkt. #11 at 77, citing ECF Dkt. #11 at 98.  Plaintiff had testified at the hearing that he was fired from his last job

-17-

for leaving the job without telling a supervisor.  ECF Dkt. #11 at 98.  The ALJ also cited to Plaintiff's reports and testimony at the hearing that he continued to seek work after his alleged onset date, and was performing jobs in his neighborhood such as snow removal, lawn care and painting.  *Id.* at 72, citing ECF Dkt. #11 at 566.  The ALJ found that these activities showed that Plaintiff's activities were somewhat greater than those expected given Plaintiff's complaints and limitations.  ECF Dkt. #11 at 77.  The ALJ also noted that none of the activities alone would warrant a finding of no disability, but these activities in combination "strongly suggest that the claimant would be capable of performing the work activities inherent in the residual functional capacity therein."  *Id.*  The undersigned agrees and recommends that while the ALJ did not address every one of the factors in SSR 96-7p, the ALJ's credibility analysis was adequately explained and supported by substantial evidence.

Plaintiff also mentions that "[a] consideration of his side effects of the Claimant's medications by the ALJ might have been helpful here."  ECF Dkt. #15 at 668.  Plaintiff cites to his hearing testimony that a medication prescribed by his psychiatrist made him drowsy and that he also "messes up the checkbook and make mistakes."  *Id.*  However, an ALJ is not required to discuss every factor of SSR 96-7p in her decision.  *Davenport v. Comm'r of Soc. Sec.*, 2012 WL 414821, at *8 (Jan. 19, 2012), citing *Bowman v. Chater*, No. 96-3990, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997), unpublished ("While this court applied each of [the § 404.1529(c)(3)] factors in *Felisky [v. Bowen,* 35 F.3d 1027, 1039-1040 (6th Cir. 1994)] we did not mandate that the ALJ undergo such an extensive analysis in every decision.").  Moreover, the only side effect reported by Plaintiff to his mental health providers was a possible increased frequency in urination reported in June 2008 and the records show that Plaintiff denied any side effects from his psychiatric medications on July 8, 2008, July 22, 2008, August 11, 2008, September 22, 2008, October 2, 2008, October 22, 2008, November 19, 2008, January 22, 2009, September 22, 2009, November 17, 2009, February 22, 2010, and August 25, 2010.  ECF Dkt. #11 at 338, 349, 351, 353, 360, 403, 425, 505, 524, 539, 560, 563,

567, 607. Thus, the fact that the ALJ failed to address this factor had no prejudicial impact upon the disability determination.

For these reasons, the undersigned recommends that the Court find that the ALJ conducted an adequate credibility analysis and substantial evidence supports that analysis.

**D**.  **RFC**

Plaintiff also challenges the ALJ's RFC finding him capable of performing light work with the limitations of:  no exposure to loud background noise; simple and routine tasks that can be learned in thirty days or less; low stress tasks which are defined as those with no high production quotas, such as piece work or assembly line work, with no strict time requirements; no arbitration, negotiation or confrontation; and jobs which do not involve directing the work of or being responsible for the safety of others.  ECF Dkt. #15 at 663-664; ECF Dkt. #11 at 74.  Plaintiff contends that no such RFC existed in the record for the ALJ to make such a determination and the ALJ failed to accommodate the RFC to incorporate his need to take more frequent breaks than normal due to the side effects of his medication.  ECF Dkt. #15 at 664-665.

The RFC is an assessment of the most that a claimant can do in a work setting despite the physical and mental limitations imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC assessment considers all of a claimant's medically determinable impairments, including those that are not deemed "severe" at Step Two of the sequential evaluation process.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  In determining the RFC, an ALJ evaluates "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  According to SSR 96–8p, an ALJ's RFC assessment must address a claimant's exertional and nonexertional capacities and must be based "on all the relevant evidence in the case record," which includes: a claimant's] medical history, medical signs and laboratory findings, the effects of treatment, including side effects and dosages, daily activities, lay evidence, recorded observations, medical source

statements, the effects of symptoms, such as pain, that are reasonably attributed to a medically determinable impairment, attempted work efforts, need for a structured living environment and work evaluations.  SSR 96-8p.

In the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.  The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." *Id*.

In this case, the ALJ met the requirements for articulating the RFC determination and substantial evidence supports her determination.  She reviewed the medical records regarding each of Plaintiff's impairments and considered his testimony regarding them and any resulting limitations therefrom.  ECF Dkt. #11 at 75-78.  She reviewed the medical records regarding Plaintiff's ear impairments and accordingly limited him to work that involved no exposure to loud background noises.  *Id*. at 75.

Plaintiff challenges the ALJ's RFC assessment regarding his degenerative disc disease, citing his own testimony that he was limited to walking to the end of his own street before experiencing pain. and he could only lift twenty pounds once or twice.  ECF Dkt. #15 at 663.  The ALJ addressed Plaintiff's back impairment, cited it as a severe impairment, and reviewed the medical evidence relating to it.  She cited to the diagnostic imaging from 2006 which showed the impairment, but she noted that no  recent records addressed this impairment and in fact essentially normal findings were recently found except for only a mild progression of degenerative disc disease.  ECF Dkt. #11 at 75-

76.  She also noted that Plaintiff did not treat for this impairment, did not more than occasionally complain of the impairment, and only recently began taking ibuprofen for this impairment.  ECF Dkt. #11 at 76, citing ECF Dkt. #11 at 94-95.  Despite this sparse evidence, the ALJ nevertheless credited Plaintiff's testimony and reasonably accommodated his back impairment by limiting him to light work, which involves sitting up to six hours per day and standing/walking only up to six hours per day.  ECF Dkt. #11 at 75.  Moreover, the lifting requirement for light work more than reasonably accommodated Plaintiff's complaints and testimony as he testified that he could lift twenty pounds once or twice and light work limits the ability to lift objects to ten pounds frequently and twenty pounds only on occasion.  20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff also cites to the notes and opinion of Dr. Salzgeber, his podiatrist, who indicated that Plaintiff's cellulitis caused a nail condition which caused pain and pressure which limited ambulation.  ECF Dkt. #15 at 664.  Dr. Salzgeber noted on August 18, 2008 that Plaintiff was ambulatory but had a history of cellulitis from the self care of his nails which caused thickened nails and pressure and pain upon Plaintiff's ambulation.  ECF Dkt. #11 at 463.  Dr. Salzgeber performed a debridement procedure on Plaintiff's nails on that date.  *Id*.  On December 18, 2008, Plaintiff saw Dr. Salzgeber again and the doctor noted that Plaintiff had past problems with cellulitis because he was cutting his nails with wire clippers.  *Id*. at 486.  Dr. Salzgeber noted that since Plaintiff had stopped doing this, his condition had improved.  *Id*.  Further, as pointed out by Defendant, the treatment notes of Dr. Krofina, Plaintiff's general practitioner, indicated on July 7, 2008 upon a recheck of Plaintiff's cellulitis that it had resolved and Plaintiff felt fine. *Id*. at 346.  Admittedly, the ALJ did not mention Dr. Salzberger's notes and opinion.  However, based upon the medical evidence in the record and Plaintiff's testimony at the hearing, no limitation from this condition existed.  At the hearing, Plaintiff indicated that he had not seen Dr. Salzburg in quite a while and he indicated he did not have any problems with his toenails.  ECF Dkt. #11 at 101-102.  The only foot pain he acknowledged was "a sharp pain in the ankle" "once

in a while" when he descends stairs.  ECF Dkt. #11 at 102.  The treatment notes and Plaintiff's testimony thus fail to show that Plaintiff was limited in any greater capacity than the ALJ determined in her RFC.

.      In determining Plaintiff's RFC, the ALJ also acknowledged and credited Plaintiff's testimony regarding his daily living activities, which included performing yard work and doing odd jobs such as lawn care, snow removal and painting for his neighbors.  ECF Dkt. #11 at 72.  She also cited Plaintiff's reports to his medical providers and in his social security forms that he was working or looking for work after his alleged onset date.  *Id.* at 77.  She found that these factors suggested that Plaintiff was not as limited as he had asserted.

Based upon the medical and non-medical evidence, the undersigned recommends that the Court find that the ALJ adequately articulated her RFC and the evidence that she relied upon in determining that Plaintiff could perform limited light work.

The Court should also reject Plaintiff's assertion that the ALJ erred by not including a limitation in her RFC that Plaintiff would require more frequent breaks than normal because of the side effects from his medication.  First, the undersigned notes that Plaintiff fails to cite to any record medical evidence in his brief that supports such limitations and the record does not support such limitations.  *See Leffel v. Comm'r of Soc. Sec.*, 30 Fed. App'x 459, 461 (6ᵗʰ Cir. 2002), unpublished ("The problem with Leffel's argument, however, is the fact that the record below contains no medical evidence describing such limitation.").  As indicated above, the medical records regarding Plaintiff's psychiatric medications showed that he complained one time regarding a possible increase in the frequency of urination and that at nearly all of his other appointments, he denied any side effects from his medications.  Second, while Plaintiff correctly indicates that the ALJ included such limitations in one of the hypothetical questions that she presented to the VE, the ALJ was not bound to accept all of the limitations that she presented in the hypothetical.  The ALJ's hypothetical person "need only

-22-

include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 548 (6th Cir. 2002).  The medical evidence did not support the limitation and, as explained above, substantial evidence supported the ALJ's credibility determination.  Accordingly, the undersigned recommends that the Court find no merit to Plaintiff's assertion.

**V**.        **CONCLUSION AND RECOMMENDATION**

For the above reasons, the undersigned recommends that the Court AFFIRM the decision of the Commissioner and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

Dated: February 15, 2013                              */s/ George J. Limbert*
                                                      GEORGE J. LIMBERT
                                                      UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).